IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REGINALD FOLKS, | ) | CASE NO. 1:13 CV 2292 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| AARON PETITT, *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendants. | ) | **ORDER** |

## Introduction

Before me[1] in this matter regarding Reginald Folks's claim that Cleveland police officer Aaron Petitt violated 42 U.S.C. § 1983 in using excessive force to arrest Folks, as well as violated state law by committing assault and battery and intentionally inflicting emotional distress during that same arrest,[2] is a motion by Petitt for summary judgment.[3] Folks has opposed the motion,[4] and Petitt has replied to that opposition.[5] The City of Cleveland, which was originally named as a defendant, was earlier dismissed from the case.[6]

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 26.

[2] ECF # 1.

[3] ECF # 70.

[4] ECF # 73.

[5] ECF # 78.

[6] ECF # 16.  The complaint also names five "John Doe" defendants, who have neither been identified or served since the complaint was filed in October, 2013. As will be discussed below, these defendants will be dismissed.

Petitt's motion *in limine* to exclude the expert report and testimony of Dr. Judie Shields is addressed separately.[7]

For the reasons that follow,  Petitt's motion for summary judgment will be granted in part and denied in part as is more fully set forth below.

## Facts

The facts, which must be viewed in the light most favorable to Folks, were stated by Judge Wells in her opinion dismissing the City of Cleveland from this case, and are re-stated here.

> The plaintiff Reginald Folks was raised in Kinston, North Carolina.  For the past eight years, he was a resident of Sagamore Hills, Ohio.  Mr. Folks was employed as a Patient Access Specialist at Case Medical Center, and as a Legal Administrative Specialist at the Department of Veteran Affairs. Defendant Officer Aaron Petitt was, at all times relevant, an employee of the City of Cleveland, Ohio, Police Department.  Defendant City of Cleveland ("Cleveland") is a unit of local government organized under the laws of the State of Ohio.

> At roughly, 10:30 a.m. on 27 October 2012, Officer Petitt conducted a traffic stop of Mr. Folks on Chester Avenue near East 79th Street in Cleveland, Ohio.  During the stop, Mr. Folks asked Officer Petitt why he had been pulled over, and the officer explained that after running Mr. Folks' license plates, he determined that Mr. Folks' license had been suspended.  Mr. Folks, in fact, did not have a suspended license.  Nonetheless, Officer Petitt handed Mr. Folks a citation and told him to sign it.

> Mr. Folks, knowing that his license was not suspended, explained to Officer Petitt that there must be a mistake.  Suddenly enraged, Officer Petitt placed Mr. Folks under arrest and ordered him out of the car.  Mr. Folks tried to explain to Officer Petitt that he was merely asking a question about the mistake regarding his license.  Officer Petitt again demanded that Mr. Folks

---

[7] ECF # 74.

exit his car and repeatedly told him to "act like [an] adult" Mr. Folks complied with Officer Petitt's demand, and he began to get out of his car.

When Mr. Folks opened the door, Officer Petitt grabbed Mr. Folks' left arm and pulled him out of the car. In doing so, Officer Petitt twisted Mr. Folks' left arm, which caused Mr. Folks immediate and tremendous pain. While continuing to twist his arm, Officer Petitt punched Mr. Folks in the area of his right eye. Officer Petitt slammed Mr. Folks's head against his car and cuffed his hands tightly behind his back.

The backseat of Officer Petitt's cruiser was oriented in such a way that there was not enough room for Mr. Folks to step into it.  In the process of trying to enter the police cruiser, Mr. Folks' foot became wedged between the front and back seats.  With his hands cuffed behind his back, Mr. Folks was unable to free his foot.  Further affecting his ability to unwedge himself was the fact that his ankle had six metal pins in it, apparently from an earlier surgery.  Mr. Folks told Officer Petitt that his medical condition was affecting his ability to extricate his foot.

At this time, a second, unidentified officer arrived at the scene and assisted Officer Petitt in placing Mr. Folks into the back of the police cruiser. The second officer went to the other side of the car and attempted, with Officer Petitt's help, to pull Mr. Folks into the cruiser, which caused Mr. Folks additional pain.  Once the officers had stuffed Mr. Folks into the back of the cruiser, he was taken to the Justice Center.

Mr. Folks was jailed at 11:30 A.M. and released the same day at 7:45 P.M. The charges for driving under suspension were dismissed for want of prosecution on 14 November 2012.

The next morning Mr. Folks went to the hospital to receive treatment for the injuries he allegedly sustained from Officer Petitt's use of force.  A physician diagnosed Mr. Folks as having injuries, including, but not limited to, sustained facial and scalp contusions and strained muscles.  The plaintiff alleges that these injuries were caused by Officer Petitt and the other unidentified officer.

On 16 October 2013, Mr. Folks filed this lawsuit.  The complaint asserts claims of excessive force in violation of the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983 against Officer Petitt, the City of Cleveland, and five John Does.  Mr. Folks also brings state law

3

claims of assault and battery and intentional infliction of emotional distress against Officer Petitt only.  Mr. Folks seeks compensatory and punitive [] damages and reasonable attorney fees, costs, and disbursements.[8]

## Analysis

### A.      Standard of review - summary judgment

The court should grant summary judgment if satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[9] The moving party bears the burden of showing the absence of any such "genuine issue":

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[10]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[11]

Determination of whether a factual issue is "genuine" requires consideration of the applicable

---

[8] ECF # 16 at 2-3.

[9] Fed. R. Civ. P. 56(c).

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[11] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

evidentiary standards.[12] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[13]

The court should not grant summary judgment if a party who bears the burden of proof at trial does not establish an essential element of his case.[14] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[15] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[16]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[17] But if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[18]

---

[12] *Id.* at 252.

[13] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[14] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[15] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[16] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[17] *Id.* at 252.

[18] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

5

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[19] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[20] The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[21]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[22] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.

---

[19] *Anderson*, 477 U.S. at 256.

[20] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[21] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[22] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

6

Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[23]

But the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[24]

As a general matter, the judge considering a motion for summary judgment need examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[25] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[26] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[27]

In sum, proper summary judgment analysis entails:

---

[23] *Id.* at 225-26 (citations omitted).

[24] *Id.* at 226 (citations omitted).

[25] *Anderson*, 477 U.S. at 248.

[26] *Id.* at 249.

[27] *Id.*

the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[28]

**B.    Application of standards - the motion will be granted in part and denied in part**

Petitt asserts that he is entitled to qualified immunity as to the federal claim and statutory immunity as to the claim under Ohio law.[29] This issue will be addressed separately.

*1.    Qualified immunity*

As to claims of qualified immunity, the Sixth Circuit has stated the standard of review to be as follows:

> Section 1983 creates a private right of action against officials, who under the color of state law, deprive individuals of their constitutional rights. 42 U.S.C. § 1983. Here, the police officers do not dispute that they were acting under the color of state law at the time of the incident. Instead, they maintain that they did not deprive Brown of his constitutional rights, and they raise the defense of qualified immunity.
>
> Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna* –U.S. –, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). A qualified immunity-inquiry involves two questions: whether defendants violated a constitutional right and whether that right was clearly established. *Pearson*, 555 U.S. at 232, 129 S.Ct. 808. On summary judgment, the court must analyze these questions after construing the facts in the light most favorable to the party

---

[28] *Id.* at 250.

[29] ECF # 70 at 4.

8

asserting the injury and drawing all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 377, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *see also Ortiz* ex rel. *Ortiz v. Kazimer*, 811 F.3d 848, 850-51 (6th Cir. 2016). These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages. *Pearson*, 555 U.S. at 236, 129 S.Ct. 808; *Martin v. City of Broadview Heights*, 712 F. 3d 951, 957 (6th Cir. 2013).[30]

Further, as to qualified immunity in matters alleging excessive force, the Sixth Circuit has stated the applicable law as follows:

To determine whether officers' use of force in effecting [*Sic*] an arrest is excessive and thus in violation of the Fourth Amendment, a court must consider "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed. 2d 443 (1989) (internal quotation marks omitted). The court makes this evaluation "from the perspective of a reasonable officer on the scene" because "police officers are often forced to make split second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *id*. at 396-397, 109 S.Ct. 1865. "At the summary judgment stage, . . . once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, . . . the reasonableness of [the defendants'] actions . . .is a pure question of law." *Scott*, 550 U.S. at 381 n. 8, 127 S.Ct. 1769 (emphasis removed); *Chappell v. City of Cleveland*, 585 F.3d 901, 909 (6th Cir. 2009).

This evaluation is not confined to the facts and circumstances confronting the officers, however. It also considers the effects of their actions, as any inquiry into a violation of the Fourth Amendment "requires a careful balancing of the 'nature and

---

[30] *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016).

9

quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)); *see also United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). "[T]he ultimate question is whether the totality of the circumstances justifies a particular sort of seizure." *Ciminillo v. Stretcher*, 434 F.3d 461, 467 (6th Cir. 2006) (internal quotation marks omitted). [31]

## 2.    *Factual allegations*

As Judge Wells noted in the summary of facts, the federal excessive force claim arises out of the following allegations:

(1) that as Folks was getting out of his car in response to Petitt's command, Petitt "grabbed Folks arm and pulled him out of his car ... in so doing, Petitt twisted Folks' left arm which caused Folks immediate and tremendous pain;"[32]

(2) that "while continuing to twist his arm, Petitt punched Folks in the area of his right eye;"[33]

(3) that Petitt then "slammed Folks' head against his car and cuffed his hands tightly behind his back;"[34]

(4) that in the process of trying to enter the police cruiser "Folks' foot became wedged between the front and back seat" such that Folks was "unable to free his foot," which

---

[31] *Id*. at 458-59.

[32] ECF # 16 at 3.

[33] *Id*.

[34] *Id*.

10

situation was aggravated by the fact, relayed to Petitt, that Folks' ankle had six pins in it from an earlier surgery;[35]

(5) an additional officer assisting Petitt tried to pull Folks into the cruiser, causing additional pain;[36] and

(6) a physician diagnosed Folks the next day as "having injuries, including, but not limited to, sustained facial and scalp contusions and strained muscles," which Folks asserts were caused by Folks' conduct and that of the assisting officer.[37]

### 3.   *Analysis*

#### a.   *Rule 56 evidence*

Folks's description of his arrest in his deposition testimony is that Petitt "snatched"[38] or "pulled"[39] Folks out of his vehicle, during which event Petitt "grabbed"[40] Folks's arm while "spinning"[41] Folks around so that Petitt could take Folks toward the back

---

[35] *Id*.

[36] *Id*.

[37] *Id*. at 3-4.

[38] The description that Petitt "snatched" Folks out of the car is used no fewer than nine times over a span of four pages of testimony. ECF # 70, Attachment 2 at 37-41. The term was never defined by Folks who was not asked to define it.

[39] *Id.* at 39.

[40] *Id*. at 37, 40.

[41] *Id*. at 40, 41.

of Folks's vehicle,[42] where Petitt "pushed"[43] Folks "face first"[44] against the back windshield

of Folks's vehicle[45]prior to handcuffing Folks.[46]

A review of Folks's deposition testimony demonstrates during Folks's lengthy

recounting of the individual details of his arrest, which covers 17 pages in the deposition

transcript,[47]there is no mention of any punches being thrown, as is alleged in the complaint.[48]

I further note, again in contrast to the allegations of the complaint, that there is also no

deposition testimony by Folks that the handcuffs had been too tight on his wrists.[49]

As the arrest sequence progressed to where Folks, now handcuffed, was being placed

into the zone car, Folks's Rule 56 testimony is that he informed Petitt upon initially viewing

the available space in the back seat that "I have a plate and six pins in my leg, and I can't get

in here."[50]At that moment, Folks's testimony is that two other officers arrived on the scene

---

[42] *Id*. at 37, 40, 41. Folks alternately referred to his vehicle as his "truck" (*id*. at 37, 40, 41, 55) and his "car" (*id*. at 39, 41).

[43] *Id*. at 37, 41.

[44] *Id*.

[45] *Id*.

[46] *Id*.

[47] *Id*. at 37-54.

[48] *See*, ECF # 1 at 5 ¶ 31 ("While continuing to twist Mr. Folks [*sic*] arm, Defendant Petitt punched Mr. Folks in the area of his right eye.").

[49] *Id*. at ¶ 32.

[50] ECF # 70, Attachment 2 at 44.

to assist Petitt, and that, with one on each side of the zone car, "one [officer] pulled me in while the other one is pushing me in[to] the back seat of Officer Petitt's car."[51]Specifically, Folks testified that he was having difficulty entering the zone car, and in that regard, he had partially entered the back seat area in a way that "was putting pressure on my right ankle where I have a plate and six pins."[52]

Although Folks testified that he alerted Petitt to the presence of surgical repairs in his ankle, and further testified that his ankle was under "pressure" as he was "pulled"[53] and/or "pushed"[54] into the back seat, there is no Rule 56 deposition testimony that Folks was specifically articulating contemporaneous complaints of great pain[55] or insisting that alternative means be used to help him into the zone car, nor contending that he had been placed in an unusual posture or position that gave rise to continuous pain.[56]

---

[51] *Id*.

[52] *Id*. at 46.

[53] *Id*. at 44, 45.

[54] *Id*.

[55] Later in his deposition Folks testified that when questioned about the complaints he had when he went to the hospital shortly after the incident: "I never complained about my leg except when they put me in the car, but that wasn't any of the chief complaint or any assessment that was done when I went to the emergency room on October 29, 2012." *Id*. at 62.

[56] *See, id*. at 46-47. "Q. So it would be fair to say that the first point in time that you noticed the other two officers is as your foot is being put in the car and you are voicing your concern about your ankle – was it an ankle injury, foot injury? A. I was informing the officers about my foot injury."

13

Further, to the extent this assertion concerning the way Folks was placed into the zone car alleges claims against unidentified John Doe officers who actually pushed or pulled Folks into the car, these defendants have never been identified or served.   As is discussed in a separate order entered contemporaneously, the defendants have been granted summary judgment as to all claims asserted against them and have been dismissed from the case.

Thus, Petitt is the only defendant before me in this matter, and, as discussed above, the Rule 56 evidence concerning Petitt in this regard is simply that he was made aware that Folks had a surgically repaired ankle or leg.  There is no evidence in this record that Petitt was directly told that Folks had been placed in a painful situation, nor that Folks had specifically asked that alternative means be utilized in placing him into the zone car, which request had been refused.  As such, Petitt's motion for summary judgment as to this element of the claim is granted.

As to injuries, the law of the Sixth Circuit is clear that the relevant consideration in cases alleging excessive force is not the extent of the injury, but whether the officer has subjected a detainee to "gratuitous violence."[57]  In that regard, even where the physical contact between the two parties did not leave "excessive marks" or "cause extensive physical damage" to the complaining victim, that party may nevertheless maintain an action for excessive force under Section 1983.[58]

---

[57] *Mallin v. City of Eastlake*, 755 F.Supp.2d 819, 837 (N.D. Ohio 2010)(internal citation and quotation omitted).

[58] *Id*. (citation omitted).

Here, Folks has shown more than enough to proceed. Folks was shown during his deposition a copy of the photograph he alleges depicts his injuries.[59] Although Petitt now argues that Folks's injuries were "so minor [that] Folks himself could not identify signs of injury when shown the photos in his deposition,"[60] in fact Folks's repeated reason for not specifically identifying his injuries in the photo was that the picture was "not a clear picture;"[61] a "terrible picture;"[62] "all a blur,"[63] and not a "great copy of the pictures we gave [the defense], not at all."[64]

Far from indicating, as Petitt suggests, that Folks himself essentially conceded that his alleged facial injuries were so minor or insubstantial as to be virtually invisible, a plain reading of Folks's testimony is that he clearly stated that "there were contusions in the pictures that we gave that were very clear. You could see the contusions on my face. And if you look at my face, you can see that the area is still there. It has not gone away."[65] But,

---

[59] *Id.* at 57.

[60] ECF # 78 at 9.

[61] ECF # 70, Attachment 2 at 57.

[62] *Id*. at 58.

[63] *Id.* at 59.

[64] *Id*.

[65] *Id*. at 57.

Folks testified, despite the clarity of the original photo, the pictures he was presented with at the deposition were "terrible copies" of the original pictures.[66]

Moreover, Folks testified at his deposition that when he was "slammed"[67] into the back windshield, "it caught my shoulder, it caught my face, it caught pretty much my face and upper body,"[68] such that he was diagnosed at the hospital emergency room with "facial, neck and head contusions."[69]

In addition to this claim of physical injury, Folks asserts in the complaint that his injuries from the conduct he alleges are "not limited to"[70] the facial and scalp contusions that are purportedly depicted in the photographs from the emergency room. To that end, he submitted an expert report from Julie Shields, Ph.D., a psychologist, that goes to the presence of PTSD.[71] That report was the subject of a motion *in limine* filed by Petitt[72] which was granted in part and denied in part in a separate entry issued contemporaneously with this opinion.

---

[66] *Id*. at 59.

[67] *Id*. at 63.

[68] *Id*.

[69] *Id*. at 62.

[70] ECF # 1 at 6.

[71] ECF # 73, Attachment 1.

[72] ECF # 74.

b.   *Petitt is not entitled to qualified immunity such as to warrant summary judgment on all aspects of the arrest, but is entitled to summary judgment on other claims*

As has been discussed, there is no Rule 56 evidence in this record to support any claims for excessive force arising out of any punch thrown in the arrest, nor arising out of any claim of injury or excessive pain to Folks's ankle/leg/foot arising out of his being placed into the zone car. Thus, because there is a total lack of Rule 56 evidence to support these claims, Petitt is entitled to summary judgment on these allegations.[73]

But, the Rule 56 evidence, construed most favorably to Folks, shows that Petitt would be liable in this case, and as regards the remaining claims, for using unreasonable, excessive force as a matter of law. In particular, it would be excessive force if it were established to a jury that Petitt "snatched," or "pulled" an otherwise cooperative, non-violent Folks out of his vehicle before then "slamming" or "pushing" Folks face first into the back windshield of Folks's vehicle such that it produced facial, neck and head injuries that were visible to examining physicians in a hospital emergency room, and are shown on photographs taken at the time.

While it is true that the law recognizes that officers should not be second-guessed about split-second decisions made in the context of circumstances that are "tense, uncertain and rapidly evolving,"[74] a reasonable officer in Petitt's situation would have been on notice

---

[73] There is no Rule 56 evidence here that would impose liability on Petitt for not intervening to stop the other, assisting officers from allegedly using excessive force in placing Folks into the zone car. *See, Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982).

[74] *Graham*, 490 U.S. at 396-97.

17

that there is no warrant in the law for slamming or pushing a non-violent, co-operative detainee, stopped for a non-violent offense and where events were not fast-moving or confusing, face-first into a windshield.[75] Petitt's attempt to explain or justify this action as merely unintentional or accidental contact which arose incidentally to placing Folks against his vehicle so as to apply handcuffs[76] is, at best, a jury argument as to whether or not the act Folks repeatedly described as "pushing" or "slamming" was actually not intentional.

As to the Ohio law claim alleging that Petitt is liable for assault and battery, the law is well-settled that where a genuine issue of material fact exists as to whether an officer's use of force was reasonable, a genuine issue of material fact will also exist as to whether the officer is liable for assault and battery.[77] Thus, for the reasons stated above, Petitt is not entitled to statutory immunity on the claim of assault and battery, nor is he entitled to summary judgment.

But, in regard to the Ohio law claim for intentional infliction of emotional distress, a necessary element to establishing a claim of intentional infliction of emotional distress in

---

[75] *Mallin,* 755 F.Supp.2d at 838 (citations omitted). Based on Sixth Circuit decisions as of 2010, a reasonable officer would have been "on notice that slamming [the plaintiff's] face into a police car was unlawful by this Circuit's numerous decisions holding that the force alleged to have been used would be unreasonable where the suspect was slammed against a vehicle or other stationary object."

[76] ECF # 70 at 11.

[77] *Ward v. Cnty. of Cuyahoga,* 721 F.Supp.2d 677, 694 (N.D. Ohio 2010)(citations omitted).

18

Ohio is that the actor's conduct be "outrageous and extreme beyond all bounds of decency."[78] The Sixth Circuit has noted that establishing a *prima facie* case of intentional infliction of emotional distress under Ohio law is difficult, because "to say that Ohio courts narrowly define extreme and outrageous conduct would be an understatement."[79] Judge Oliver concluded in *Norman* that an officer who hurriedly placed a detainee in handcuffs and then forced her right arm back "really hard" such that the arm was broken, did not intentionally inflict emotional distress as a matter of law because, whatever else such conduct may be, it was not "*outrageous and extreme beyond all bounds of decency* and subsequently cannot be characterized as utterly intolerable in a civilized community."[80]

As has been discussed above, that to the degree that this claim of intentional infliction of emotional distress goes to words or actions of unidentified John Doe officers and not the conduct or words of Petitt himself, those John Doe officers have been granted summary judgment as to all claims against them in a separate order that is issues contemporaneously with this Order.

Here, although a jury question remains as to whether Petitt used excessive force in the arrest when Folks's face and head came in contact with the windshield, that act alone, as *Norman* indicates, would not give rise to a claim for intentional infliction of emotional

---

[78] *Norman v. City of Lorain,* 2006 WL 3337466, at * 2 (N.D. Ohio Nov. 16, 2006)(citation omitted).

[79] *Id*. (citation omitted).

[80] *Id*. (emphasis original).

distress under Ohio law. Moreover, although as concerns this claim Folks relies a great deal on his testimony about disrespectful,[81] threatening[82] or crude[83] language directed at him by Petitt or other officers. Similarly, merely disrespectful, crude or even mildly threatening language by police officers in course of making an arrest or transporting a detainee to a booking facility is not so outrageous and extreme as to be beyond all bounds of decency and so utterly intolerable in a civilized community. While such conduct is by no means to be encouraged or held out as exemplary, neither is it, of itself, particularly unusual or shocking.[84]

By resolving this claim on the grounds stated above, it should not be understood that no consideration was afforded to Folks's allegation that he has suffered from PTSD as a

---

[81] ECF # 70, Attachment 2 at 48 (two officers were "laughing" at Folks); 50 (officer "screaming and hollering" told Folks "just shut up, shut up ... you're going to jail").

[82] *Id*. at 41 (Petitt told Folks "you're going to jail"); 51 (supervisor was "very, very" close to Folks's face while yelling at him); 52 (supervisor "never asked me if I was okay ... he was just in my face screaming at me, saying 'Shut up. If you talk you just make things worse'").

[83] *Id*. at 35, 36, 37 (Petitt called Folks a "smart ass).

[84] The facts here differ from those in *Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601 (6th Cir. 2014) upon which Folks relies. Specifically, *Hayward* details a prolonged "reign of terror" by police where five officers first pounded on the door to a locked home, and then after the homeowner refused entry, forced their way inside by means of shattering a window with the butt of a shotgun before beginning to blindly fire their tasers inside. Once the subject was subdued with the taser, the officers took him outside where they continued to beat him with their batons, lick him in the head, and continuously taser him for an excruciating thirty seconds, all while using racial slurs, before finally arresting him. *Id*. at 605-06. Compared to the prolonged, brutal assault detailed in *Hayward*, Folks's complaint about being laughed at or being called a smart ass or told to shut up is not meaningfully similar.

result of his encounter.[85] But, to make out a case of intentional infliction of emotional distress, it is not enough that the conduct produce even a severely negative effect, but rather the conduct itself must "rise[] to a level of outrageousness necessary to permit recovery."[86] As detailed above, the "mere insults, indignities, threats, annoyances, petty oppressions"[87] alleged by Folks are not sufficient to support a claim in this regard.

## Conclusion

Accordingly, for the reasons stated, Petitt's motion for summary judgment is granted in part and denied in part as is more fully detailed above.

IT IS SO ORDERED.

Dated: May 23, 2016                                  s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

---

[85] ECF # 73 at 21.

[86] *Hayward*, 759 F.3d at 619 (quoting *Baab v. AMR Servs. Corp.*, 811 F.Supp. 1246, 1269 (N.D. Ohio 1993)).

[87] *Hayward*, 759 F.3d at 619 (internal quotation and citation omitted).